UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

COURTNEY WILSON,

                                        Plaintiff,

            v.                                    9:08-cv-618

JOSEPH F. DAVID, et al.,

                                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Plaintiff Courtney Wilson commenced the instant action against Defendants

pursuant to 42 U.S.C. § 1983 arising out of a claimed sexual assault by New York State

Corrections Officer Kevin Biegel while she was an inmate at the Greene Correction Facility.

Presently before the Court is Defendants Joseph F. David and Robert A. Fitch's motion for

summary judgment pursuant to Fed. R. Civ. P. 56 seeking dismissal of the Complaint against

them in its entirety.

## I.      FACTS

At all times relevant hereto, Plaintiff was an inmate in the custody of the New York

Department of Corrections ("DOCS").  Plaintiff was incarcerated at the Greene Correctional

Facility from July 7, 2005 until December 23, 2005.  During Plaintiff's incarceration,

Defendant Joseph F. David ("David") was the Superintendent of Greene Correctional Facility

and Defendant Robert A. Fitch ("Fitch") was the Deputy Superintendent of Security.

Plaintiff alleges that, commencing in September 2005 and ending in November 2005, Defendant Correction Officer Kevin Biegel ("Biegel") repeatedly sexually assaulted her.[1] Plaintiff claims that, in November 2005, Biegel forced Plaintiff to perform oral sex on him, that Biegel ejaculated in Plaintiff's mouth, and that Plaintiff spit the ejaculate into a brown paper towel and into a plastic garbage bag. Plaintiff contends that she then gave half of the paper towel to another inmate, Martin Cortez, and mailed the other half to her mother.

During the aforementioned three month period, Plaintiff never reported Biegel's conduct to Defendants Fitch, David, or anyone else at Greene Correctional Facility or DOCS. Plaintiff never requested that she be assigned to another job,[2] that she be placed in protective custody, or that she be transferred from Greene Correctional Facility.

On November 14, 2005, Plaintiff's mother, Synthia Johnson ("Johnson"), telephoned the Inspector General ("IG") and reported that Plaintiff was being sexually abused by a corrections officer at Greene Correctional Facility. Johnson advised the IG that she was in possession of the piece of paper towel purportedly containing Biegel's seminal fluid. The IG opened an investigation into the allegations.

On December 2, 2005, IG investigators interviewed Plaintiff at Greene Correctional Facility. IG investigators also interviewed Martin Cortez and obtained the piece of paper towel containing Biegel's seminal fluid. The IG turned the paper towel over to the New York

---

[1] Plaintiff identifies as a transgender woman. Compl. at ¶ 3. Plaintiff makes personal references using female pronouns. Defendants refer to Plaintiff using male pronouns. The Court will refer to Plaintiff using female pronouns, but makes no judgment or opinion considering Plaintiff's sexual identity.

[2] Plaintiff's work assignment at the Correctional Facility's gymnasium placed her in contact with Biegel.

State Police ("NYSP") Forensic Laboratory for analysis.  The IG also interviewed Johnson

and obtained the paper towel from her, which also was turned over the NYSP for analysis.

On December 2, 2005, Plaintiff was removed from her program at the gymnasium.  On

December 23, 2005, Plaintiff was transferred out of Greene Correctional Facility.

A May 31, 2006 laboratory report confirmed the presence of semen from a single,

unknown male donor on the paper towel.  The IG then requested assistance from the NYSP

in investigating the matter.  On June 7, 2006, a NYSP investigator interviewed Biegel.  During

the interview, Biegel denied the allegations of any improper sexual activity with an inmate.

During the course of the interview, Biegel discarded a piece of chewing gum in the trash.

The NYSP investigator recovered the chewing gum and submitted it to the lab for DNA

analysis.  Analysis revealed that the DNA recovered from the chewing gum matched the

DNA recovered from the paper towel obtained from Johnson.

On September 3, 2006, Biegel was arrested and charged with a Criminal Sex Act in

the Third Degree in violation of N.Y. Penal Law § 130.40(3).  On September 4, 2006, Biegel

was placed on administrative leave.  On September 5, 2006, Biegel was suspended without

pay pursuant to the applicable collective bargaining agreement.  On September 11, 2006,

Biegel was issued a Notice of Discipline that, among other things, called for his dismissal

from employment.

On November 1, 2007, Biegel was acquitted of the charges against him.

Notwithstanding the acquittal, the Bureau of Labor Relations proceeded to terminate Biegel's

employment.  On January 4, 2008, Biegel settled the Notice of Discipline by agreeing to

retire, pay a fine, and forfeit his accrued annual and holiday leave.  On January 9, 2008, the

IG placed a "do not rehire" memorandum in Biegel's employment file.  Thereafter, Biegel

sought to be reinstated by DOCS.  DOCS denied the request.  This denial is the subject of a state court proceeding.

In 2004, prior to the incidents alleged in the Complaint, Corrections Sergeant Peter Merante was assigned responsibility for investigating an allegation of sexual abuse made by, "AJ," an inmate.  "AJ" reported that he was pat-frisked by an officer named "Bidell" and that, during the course of the pat-frisk, "Bidell" rubbed the inmate's thighs and moved his hands in a circular motion on the inmate's genitals.  Merante did not uncover any evidence supporting the allegation and concluded that the allegations of sexual abuse could not be substantiated and that "AJ" was the subject of a proper pat-frisk.

Similar allegations against Biegel were made by inmate "DS."  The allegations by DS were separately investigated by the corrections staff at Greene Correctional Facility and the IG.  Both the corrections staff and the IG concluded that the allegations could not be substantiated.

Plaintiff commenced the instant action asserting violations of her rights as protected by the Eighth and Fourteenth Amendments.  Presently before the Court is Defendants David and Fitch's motion for summary judgment pursuant to Fed. R. Civ. P. 56 seeking dismissal of the claims against them in their entirety.

## II.        STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedures governs motions for summary judgment.  It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56( c).  An issue is genuine if the relevant

evidence is such that a reasonable jury could return a verdict for the nonmoving party.

Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  A party seeking summary judgment

bears the burden of informing the court of the basis for the motion and of identifying those

portions of the record that the moving party believes demonstrate the absence of a genuine

issue of material fact as to a dispositive issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986).  If the movant is able to establish a prima facie basis for summary judgment, the

burden of production shifts to the party opposing summary judgment who must produce

evidence establishing the existence of a factual dispute that a reasonable jury could resolve

in her favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A

party opposing a properly supported motion for summary judgment may not rest upon "mere

allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21

F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation.

Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

With these standards in mind, the Court will address the pending motion.

**III.      DISCUSSION**

**a.      Failure to Timely File Opposition Papers**

Before proceeding to the merits of Defendants' motion for summary judgment, the

Court must determine whether Plaintiff timely filed her opposition papers.  Defendants filed

their motion for summary judgment on January 13, 2010.  The notice on the docket properly

indicates that the response to the motion was due by "2/9/2010."  Moreover, both the docket

entry and the Notice of Motion indicate a return date of February 26, 2010.  Pursuant to the

plain operation of N.D.N.Y.L.R. 7.1(b)(1), opposition papers were due on or before February 9, 2010.

Plaintiff filed part of her opposition papers on February 10, 2010,[3] after the February 9, 2010 deadline.  In the cover letter accompanying the opposition papers, Plaintiff's attorney states that he was "aware that Plaintiff's opposition was due February 9, 2010.  However, due to technological difficulties at our office, we could not serve and file the aforementioned materials until today."  On February 11, 2010, Plaintiff submitted a letter to the Court requesting to file certain exhibits in support of her opposition papers "by traditional means and under seal rather than by CM/ECF."  In the February 11, 2010, letter, Plaintiff did not provide any reason why the exhibits were not filed prior to the February 9, 2010 deadline, why the exhibits were not filed on February 10, 2010 with the other motion papers, or why she did not seek leave to file them traditionally and under seal prior to the February 9, 2010 deadline.  See General Order # 22 (Administrative Procedures for Electronic Case Filing) at § 2.1(3) (exempting sealed documents from electronic filing); § 12.2 (requiring a proper motion or application to traditionally file sealed documents).  Plaintiff similarly did not seek leave pursuant to Fed. R. Civ. P. 6 to file late papers.

Pursuant to N.D.N.Y.L.R. 7.1(b)(3), "[t]he Court shall not consider any papers required under this Rule that are not timely filed or are otherwise not in compliance with this Rule unless good cause is shown."  Plaintiff's claimed technological difficulties do not constitute good cause.  Section 10.2 of General Order # 22 provides that:

---

[3] Plaintiff filed a responsive statement of material facts, a memorandum of law, and a declaration of service.  Plaintiff did not file any exhibits or affidavits.

> Problems with the Filing User's system, such as phone line problems, problems with the Filing User's Internet Service Provider ("ISP"), or hardware or software problems, <u>will not constitute a technical failure under these Administrative Procedures nor excuse an untimely filing</u>.  A Filing User who cannot file documents electronically because of a problem on the Filing User's system must file the documents conventionally along with an affidavit explaining the reason for not filing the documents electronically.

(emphasis added).  Section 10.2 makes it explicitly clear that the claimed technical failure does not excuse an untimely filing.  Moreover, there is nothing before the Court demonstrating that Plaintiff made any effort to timely file the documents conventionally.  Further, Plaintiff did not submit a supporting affidavit as required by section 10.2.

When Plaintiff's counsel became aware of any technological problems, he could have contacted the Court and requested relief pursuant to Fed. R. Civ. P. 6(b).  He did not do so.  Rather, he waited until after the deadline passed, filed the papers, and did not make a motion pursuant to Fed. R. Civ. P. 6(b)(1)(B).  Treating Plaintiff's filing as a motion pursuant to 6(b)(1)(B), the request for a motion for an extension of time is denied.

When application is made after the time has expired, the moving party must demonstrate excusable neglect.  Here, Plaintiff's attorney admits that he was aware of the filing deadline and that he did not file the papers due to a claimed technological problem.  As discussed, however, General Order # 22 is clear that technological issues do not constitute good cause for the failure to timely file documents.  Silivanch v. Celebrity Cruises, Inc., 333 F.3d at 366 (2d Cir. 2003) (noting that where the rule is clear, the party claiming excusable neglect ordinarily will lose under the test articulated in Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380 (1993)).  Considering the facts that Plaintiff's attorney made no effort to contact the Court to obtain appropriate relief, he made no effort to conventionally file and serve the papers on February 9, 2010, he did not provide an affidavit

explaining the claimed technological failure, and he did not file his papers until 2:28 p.m. on

February 10, 2010 after Defendants filed a letter noting Plaintiff's failure to timely file

opposition papers, the Court finds that there has not been excusable neglect.  See Redhead

v. Conference of Seventh-Day Adventists, 2010 WL 95113 (2d Cir. Jan 12, 2010)

(unreported); Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 366 (2d Cir. 2003); Canfield

v. Van Atta Buick/GMC Truck Inc., 127 F.3d 248, 251 (2d Cir.1997); Mayo v. Trustees of Iron

Workers Dist. Council of New England Pension, Health, Welfare, Annuity, Vacation and

Education Funds, 2007 WL 984151, at *1 (D. Vt. 2007); Snyman v. W.A. Baum Co., Inc.,

2009 WL 306505 (S.D.N.Y. 2005); In re Saratoga Springs Plastic Surgery, P.C., 310 B.R.

493, 498 (Bankr. N.D.N.Y. 2004).  The reason for the delay was within the reasonable control

of the movant.  For the foregoing reasons, Plaintiff's opposition papers are untimely and will

not be considered in connection with Defendants' motion for summary judgment.[4]

The Court will now address the substance of Defendants' motion.

**b.    Supervisory Liability**

Plaintiff seeks to impose liability upon the moving Defendants based upon their

status as Biegel's supervisors.  In a § 1983 action, a supervisor "may not be held liable

simply because one or more of his subordinates committed a constitutional tort."  Russo v.

City of Bridgeport, 479 F.3d 196, 210-11 (2d Cir. 2007).  The personal involvement of a

supervisor may be established by showing that he: (1) directly participated in the violation, (2)

failed to remedy the violation after being informed of it by report or appeal, (3) created a

policy or custom under which the violation occurred, (4) was grossly negligent in supervising

---

[4] For this same reason, Plaintiff's motion to file exhibits and affidavits under seal is DENIED and Defendants' motion to file additional reply papers is DENIED.

subordinates who committed the violation, or (5) was deliberately indifferent to the rights of others by failing to act on information that constitutional rights were being violated.  Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

### 1.        Direct Participation

Defendants may be found liable if they directly participated in committing the constitutional tort.  Plaintiff does not allege that the moving Defendants engaged in any sexual acts with her.  Accordingly, this does not afford a basis for holding Defendants liable.

### 2.        Failure To Remedy The Violation After Being Informed Of It Through A Report or Appeal

Defendants also may be liable if they failed to remedy the violation after being informed of it.  The undisputed evidence in the record is that Plaintiff never reported Biegel's conduct to anyone within the facility (including Defendants), never asked to be transferred to a different job assignment, never asked to be placed into protective custody, and never asked to be transferred to another correctional facility.  The matter did not come to light until Plaintiff's mother reported it to the IG.  Upon receiving the report, the IG immediately investigated the matter.  Within two weeks of commencing the investigation, Plaintiff was offered protective custody and removed from her work assignment with Biegel.  A few weeks later, Plaintiff was transferred out of Greene Correctional Facility.  Disciplinary and criminal actions were pursued against Biegel.  There were no further instances of sexual contact between Biegel and Plaintiff.  Based on the foregoing, no fair-minded trier of fact could reasonably conclude that Defendants failed to remedy the violation after being informed of it.

### 3.        Creation Of A Policy Or Custom Under Which The Violation Occurred

Defendants may be held accountable if they created a custom or policy under which the violation occurred.  Plaintiff has failed to present sufficient facts from which it can reasonably be inferred that Defendants created a policy or custom under which the violation occurred.  Plaintiff identified no policies or customs created by Defendants causally related to the injures she sustained.  The evidence is unequivocal that DOCS maintains policies prohibiting sexual contact between corrections officers and inmates.  There is insufficient evidence that Defendants did not enforce these policies at Greene Correctional Facility or that Defendants otherwise created an environment that permitted, tolerated, encouraged, or ignored such sexual contact.  To the contrary, the undisputed evidence in the record is that Defendants investigated allegations of sexual misconduct involving corrections officers and, when the allegations were found to be substantiated, took disciplinary action.  Accordingly, this does not afford a basis for imposing liability upon Defendants.[5]

### 4.        Grossly Negligent Supervision/Deliberate Indifference

Defendants may be found liable if they were grossly negligent in supervising Biegel or acted with deliberate indifference to the rights of inmates by a failure to act on information

---

[5] To the extent Plaintiff claims that Defendants created a custom or policy of housing transgendered individuals in a male correction facility, there is insufficient evidence in the record that Defendants were responsible for the classification of inmates or had the authority to place Plaintiff in a female facility.  There also is insufficient evidence that placing a transgendered inmate in a male correctional facility is likely to result in a sexual assault by a corrections officer on that inmate.  Assuming the failure to house a transgender inmate in a female prison could rise to the level of a constitutional violation, any constitutional right not to be placed in an all male facility is not clearly established and Defendants would, therefore, be entitled to qualified immunity.  See Lopez v. City of New York, 2009 WL 229956, at *13 (S.D.N.Y. 2009); see also Farmer v. Brennan, 511 U.S. 825, 829 (1994) (noting that the "practice of federal prison authorities is to incarcerate preoperative transsexuals with prisoners of like biological sex. . . .").

that unconstitutional acts are occurring.  In support of this contention, Plaintiff appears to rely

on two prior complaints of sexual misconduct by Biegel.  The undisputed evidence in the

record, however, is that, upon receiving the reports against Biegel, Defendants investigated

the matters.  The first investigation was conducted by a Corrections Sergeant.  The second

investigation was conducted by both the Greene Correctional Facility staff and the IG.  The

investigations found the allegations to be unsubstantiated.  It, therefore, cannot be said that

Defendants did nothing in supervising Biegel and/or responding to allegations concerning

him.  There is insufficient evidence in the record suggesting that the investigations were

deficient, a subterfuge, or otherwise rose to the level of gross negligence.  See Moncfrieffe v.

Witbeck, 2000 WL 949457, at *3 (N.D.N.Y. 2007).  Moreover, the two prior incidents, both of

which were found to be unsubstantiated, were insufficient in and of themselves to require

Defendants to supervise Biegel in a different manner or to otherwise cause them to act

differently than they did.  Plaintiff does not point to other evidence of which Defendants were

aware upon which it could reasonably be concluded that Defendants negligently supervised

Biegel or acted with gross disregard of ongoing constitutional violations.  Indeed, the steps

taken by Defendants concerning the prior complaints and in Plaintiff's situation belie any

contention that they acted with gross negligence or deliberate indifference to the rights of

inmates.

## IV.      CONCLUSION

For the foregoing reasons, Defendants David and Fitch's motion [Dkt. No. 45] for

summary judgment is GRANTED and the Complaint is DISMISSED IN ITS ENTIRETY as to

those Defendants.  Plaintiff's motion [Dkt. No. 52] to file portions of her opposition via

traditional means and under seal is DENIED.  Defendant's motion [Dkt. No. 53] to file an

additional reply brief is DENIED.

IT IS SO ORDERED.

Dated:February 17, 2010

Thomas J. McAvoy
Senior, U.S. District Judge